IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE V. WILLIAMS,<br>  Plaintiff | * | |
| v. | * | CIVIL ACTION NO. AW-11-682 |
| WARDEN BOBBY P. SHEARIN, et al.,<br>  Defendants | * | |
| | *** | |

MEMORANDUM OPINION

Pending are Plaintiff's Motion for Summary Judgment (ECF Nos. 14 & 15), Defendant Bobby Shearin's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (ECF No. 31), and Lisa Schindler, P.A. and Dr. Tessema's Motion to Dismiss.[1] ECF. No. 32. Plaintiff has filed several oppositions to Defendants' motions.[2] ECF Nos. 34, 35, 44-47 & 51.[3] Upon review of papers filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

**Background**

A.   Medical Claim

Plaintiff, an inmate currently confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland alleges that he suffers from Hepatitis C, prostate problems

---

[1]   The Complaint has not been served on Defendant James Weisberger, Laboratory Director. For the reasons that follow, even if Defendant Weisberger had been properly served with the Complaint, Plaintiff's claim against him would be subject to dismissal.

[2]   Plaintiff has also filed a "Motion to Hold Appeal in Abeyance until this 1983 Action has Been Decided." ECF No. 42. The Motion is denied. Plaintiff's Motion to Amend (ECF No. 44) is granted.

[3]   In ECF No. 51 Plaintiff for the first time claims that he was denied welfare commissary. If Plaintiff believes the denial of his commissary deprived him of a constitutionally protected right, he is free to file a new civil rights complaint claim naming appropriate parties.

and kidney disease. His Complaint regarding denial of medical care, stated in its entirety:

> My life is in danger of serious harm because I have Hepatitis (C), prostate problems and kidney disease. The health care provider will not provide me with the proper health treatment I am entitled to under the due process of a[n] inmate is entitled to being in prison under state and federal law. I, Wayne V. Williams #170048, I have been infected with Hepatitis (C) for about 5-years that I know about from medical staff and about 4-years with prostate problems. The P.A. Medical staff inform me that I would not receive any more vitamin[s] for chronic health care treatment unless I payed [sic] for them out [of] the inmate's commissary in which I inform[ed] medical staff and the doctor that I did not have money to pay for them. Doctor Tessema also inform[ed] me that I would not receive no more vitamin or treatment on during the month of August 2010, in which I filed a[n] administrative remedy which was dismissed by the Warden Case No. NBCI 2892-10. I tried to appeal to inmate's grievance and commissioner with no response a week after being denied. I was inform[ed] by Ms. Lisa Schindler P.A. that I would need to pay money for the vitamin[s] from out the inmate[']s commissary which I inform[ed] her that I did not have money in my account to pay for them on 1/21/2011. I have also written to Mr. James Weisberger, MD with no response concerning this matter and that I can die if not treated.

The uncontroverted medical records demonstrate that Plaintiff was transferred from Western Correctional Institution to NBCI in September, 2009. Greg Flury, P.A., on May 2, 2010, during a Chronic Care Clinic Visit, listed Plaintiff's chronic health concerns as Hepatitis C and hypertension. ECF No. 31, Ex. 1, p. 291-2. Plaintiff's sole allegation concerning the treatment he has received for his chronic conditions centers solely on the denial of prescribed muilt-vitamins. Flury ordered, in addition to prescription medications, a daily vitamin for Plaintiff to be taken May 2, 2010 to September 2, 2010. *Id.*, p. 292. Prior to the end of that prescription, Plaintiff was involved in an altercation which resulted in serious injuries and subsequent hospital and clinic visits. Id., p. 269-80. On August 28, 2010, during a skilled care visit, the physician ordered a daily multivitamin for plaintiff beginning August 28, 2010 and ending December 28, 2010. *Id*. p. 267. Plaintiff refused to appear for a scheduled clinic visit on

December 20, 2010. On December 28, 2010 the order for a daily multivitamin expired. Subsequently, none of the medical personnel examining plaintiff found a multivitamin necessary and none was ordered. *Id*. p. 131-167.

Defendant Isaias, Tessema, M.D. avers that medication is provide to inmates based on absolute medical necessity. ECF No. 32, Ex. 1. Tessema avers that vitamins are not an absolute medical necessity for the treatment of hepatitis C, prostate problems, or kidney disease. *Id*. Tessema further avers that based upon his information and belief, it is the policy of the Department of Public Safety and Correctional Services that inmates are required to purchase over-the-counter medications, if available, at the prison commissary. Vitamins are available through the commissary. *Id*.

Defendant Warden Shearin does not exercise control over private medical contractors. Id., Ex. 2. He avers that he did not interfere or delay Plaintiff's health care. ECF No. 31, Ex. 2.

B.   Mail issues

Plaintiff states that he filed an administrative remedy request regarding the denial of vitamins but his remedy was dismissed by the Warden.[4] He asserts that he appealed to the commissioner but he "was having problems with prison officials' denying me access to the court's and my Legal mail was being stop[ed] by prison officials." ECF No. 1, p. 2. He states he filed four administrative remedy requests regarding denial of access to the courts as well as problems with personal and legal mail concerning appeals in Maryland and Florida. He states he mailed an appeal to the Commissioner but received no response. *Id*.

---

[4] To the extent Plaintiff raises other issues regarding his health care in either his Motion for Summary Judgment or oppositions to Defendants' motions, such as the claim that he should not have been prescribed Motrin while he was prescribed Hytrin; should not have been prescribed Actified or Penicillin; and should have been advised that sugary foods should not be eaten due to his liver disease, etc., those claims are not properly before the Court. The only concern regarding health care raised in his Complaint was that he was denied vitamins—an item required to treat his multiple health problems. *Id*. If Plaintiff believes he has been denied adequate health care in other respects he is free to file a new civil rights claim naming appropriate parties.

The record evidence demonstrates that Plaintiff filed a Request for Administrative Remedy on September 22, 2010, concerning medical staff not authorizing his multivitamin. ECF No. 31, Ex. 3. The case was dismissed as resolved or repetitive. The IGO has no record of receiving an appeal in this matter but in any event would not have jurisdiction over complaints against an employee of a medical contractor. *Id.*, Ex. 4.

Plaintiff filed an ARP on November 9, 2010 complaining that his legal mail was not being mailed to the Florida Court of Appeals, the Circuit Court for Allegany County, or the IGO. The case was dismissed as Plaintiff admitted to the investigating officer he had received verification of the mailings at issue. Plaintiff's complaint was found to be without merit. Plaintiff's appeal to the IGO was also dismissed as being without merit. *Id.*, Ex. 3 & 4.

On January 7, 2011, Plaintiff filed another ARP complaining that his legal mail was not being mailed to the Florida District Court of Appeals. He also complained that he was unable to have the 3-11 shift officer sign this ARP request. The ARP was dismissed as previously addressed. Plaintiff's appeal to the IGO was dismissed as being without merit. *Id.*, Exs. 3 & 4.

On February 15, 2011, Plaintiff filed an ARP alleging Officers Turner and Garris mishandled his mail. The complaint was dismissed as untimely. The appeal to the IGO was dismissed as without merit. *Id.*, Exs. 3 & 4. On the same date Plaintiff filed another ARP concerning his mail not being handled correctly. The complaint was dismissed as repetitive and the IGO dismissed the appeal as meritless. *Id.*

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Analysis

**A.     Supervisory Liability**

Section 1983 liability on the part of a supervisor requires a showing that: (1) the supervisory defendant failed promptly to provide an inmate with needed medical care; (2) the supervisory defendant deliberately interfered with the prison doctors' performance; or (3) the supervisory defendant tacitly authorized or was indifferent to the prison physicians' constitutional violations. *See Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990); *see also Slakan*

*v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).   In his Complaint, Plaintiff makes no specific allegations against Warden Shearin other than he dismissed Plaintiff's administrative remedy request.  It appears that Plaintiff seeks to hold Warden Shearin responsible for his alleged lack of medical care and mail problems due solely to his supervisory role as administrator of the facility. This is the very essence of the doctrine of respondeat superior, which has no place in § 1983 litigation.  Defendant Shearin is entitled to summary judgment in their favor.

**B.    Medical Claim**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).   To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.  The second component of proof requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness

on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).  Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff's allegations that he was not provided necessary medical treatment for his multiple health problems is belied by the affidavit of Dr. Tessema.  Provision of multi-vitamins is not necessary to the treatment of Plaintiff's multiple health concerns.  Plaintiff's disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).  In granting summary judgment to defendants the court does not imply that the Plaintiff is not entitled to medical treatment for his serious conditions.  The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are

alleged." *Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances in this case.

**C.      Mail**

Prisoner claims regarding legal mail are typically analyzed as access to court claims. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S.343, at 351 (1996). Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, the Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 354. Rather, the *Lewis* Court concluded that *Bounds v. Smith*, stood essentially for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 354. Moreover, to state a claim that the delay or nondelivery of legal mail deprived him of meaningful access to the courts, a prisoner must allege adverse consequence resulting from the delay or nondelivery. *See White v. White*, 886 F.2d 721, 724 (4th Cir.1989).

Certainly, the deliberate interference with the posting of some types of outgoing mail by prison staff may state a claim of constitutional dimension. However, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *See Gardner v. Howard*, 109

F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003) ("[O]ccasional incidents of delay or non-delivery of mail do not rise to a constitutional level.") Nor does the mere negligent interference by correctional officials with an inmate's access to the courts state a cause of action under § 1983. *See Pink v. Lester*, 52 F. 3d 73, 75-76 (4th Cir. 1995).

Here, even if Plaintiff had named proper parties he has shown no actual injury or specific harm suffered as a result of the alleged interference with his mail.[5] There is no evidence that any adverse action was taken in Plaintiff's state court proceedings due to the alleged delay/non-deliver of his mail. The only evidence Plaintiff offers of injury are conclusory statements that the conduct of unspecified correctional employees violated his constitutional rights.

## Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment shall be denied. Defendants' Motions to Dismiss, construed as Motions for Summary Judgment shall be granted. A separate order follows.

February 7, 2012                                        /s/
                                                Alexander Williams, Jr.
                                                United States District Judge

---

[5] Plaintiff states that mail that "mail addressed to the first district court of appeal was meaningful to his appeal in Florida because it was Motion to be Amended to his Motion for rehearing in Florida court of Appeal." ECF No. 44. He attaches correspondence from the Florida court dated December 8, 2010 advising him that three pieces of correspondence dated October 15, November 21 and December 6, 2010 received from him were not in the proper format and would not be presented to the court for consideration. ECF No. 45 (Plaintiff's exhibit 60-2). Ultimately, his request for rehearing was denied. ECF No. 46, Ex. 102. No explanation for the denial is provided.